UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| OTTER CREEK SOLAR LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | File No. 1:16-cv-00013-jgm |
| | : | |
| GREEN MOUNTAIN POWER CORPORATION and VEPP, Inc., | : | |
| | : | |
| Defendants. | : | |
| | : | |

RULING ON DEFENDANTS' MOTIONS TO DISMISS
AND PLAINTIFF'S MOTION TO FILE A SUR-REPLY
(Docs. 4, 6, 10)

I.  Introduction

Plaintiff Otter Creek Solar LLC ("Otter Creek") filed suit against Green Mountain Power Corporation ("GMP") and VEPP, Inc. ("VEPP") (collectively, "Defendants") alleging GMP--or in the alternative VEPP--is in violation of the Federal Power ("FPA") and Public Utilities Regulatory Policies ("PURPA") Acts.  (Doc. 1 ("Compl.").)  Otter Creek seeks declaratory and injunctive relief and damages against GMP for violating Otter Creek's rights under the FPA and PURPA by refusing to agree to purchase energy and capacity from Otter Creek's solar projects at the long-term rate required by PURPA.  Id. ¶ 12.  Because GMP has asserted VEPP has the obligation to purchase the energy and capacity from Otter Creek, Otter Creek seeks relief against VEPP in the alternative.  Id. ¶ 13.  GMP and VEPP move to dismiss for lack of subject matter jurisdiction, failure to state a claim, and failure to exhaust administrative remedies under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Docs. 4, 6.)  Otter Creek opposes the motions (Doc. 7) and Defendants filed replies (Doc. 8, 9).  Otter Creek moves for leave to file a surreply in further response to GMP's motion.  (Doc. 10.)  GMP opposes the motion.  (Doc. 12.)  The motion to file a surreply is GRANTED.

II.     Background

The following facts are assumed to be true for purposes of the pending motions and are gleaned from the complaint.  Otter Creek Solar LLC is the owner and developer of small solar facilities in Vermont that it alleges will be "qualified facilities."[1]  Green Mountain Power Corporation is a Vermont retail electric company with a principal place of business in Colchester, Vermont.  GMP is regulated by the Vermont Public Service Board ("PSB").  Vt. Stat. Ann. Tit. 30, § 218.  VEPP, Inc., a Vermont corporation, is the entity designated by the Vermont PSB as the agent and facilitator for certain energy sales.

On May 1, 2013, Otter Creek filed a petition for enforcement against the PSB with the Federal Energy Regulatory Commission ("FERC").  On June 27, 2013, FERC issued a notice of intent not to act.  Otter Creek Solar LLC, 143 FERC ¶ 61,282 (2013).  Otter Creek had argued the Vermont PSB's "avoided cost rate pricing determination and mechanism in [its] feed-in tariff program, referred to as . . . SPEED," violated PURPA and the [FPA].  Id.

Otter Creek alleges it began discussions with GMP regarding contracts under PURPA in December 2013.  On January 15, 2016, Otter Creek made a final offer to GMP by sending complete and executed power purchase agreements ("PPAs").  Otter Creek offered three options for the long-run avoided cost rate to be paid:  (1) a fixed level rate of 15.5 cents per kilo-watt-hour ("KWh"); (2) a fixed level rate of 12.8 cents per KWh; and (3) a variable rate generally increasing over time.  The first option was based on the 25-year avoided cost rate, including environmental attributes, for similarly situated solar projects as determined by the PSB; the second option was based on the 25-year avoided costs, not including environmental attributes, for similarly situated solar projects as

---

[1] To be a "qualified facility," or QF, for purposes of PURPA, a power producer must meet the requirements set forth at 18 C.F.R. § 292.203 and must comply with the procedures of 18 C.F.R. § 292.207 to obtain QF status.

2

GMP testified to the PSB, and the third option was based on year-by-year projected avoided costs as determined by an energy consulting firm.  Otter Creek offered to allow VEPP to be the obligor and purchaser as an alternative to GMP.  Neither GMP nor VEPP returned executed copies of the PPAs.  Ten days later, on January 25, 2016, this suit was commenced.

Contrary to its 2013 petition to FERC, Otter Creek here alleges GMP violated the FPA and PURPA because GMP has an obligation to purchase any and all energy and capacity offered to it by Otter Creek's qualified facilities and it refused to purchase the energy and capacity offered.  Compl. ¶¶ 33-35 (Count I).  Otter Creek alleges, in the alternative, if the Court finds GMP has no obligation to purchase the energy and capacity of Otter Creek's qualified facilities because VEPP has the obligation, VEPP violated the FPA and PURPA.  Id. ¶¶ 37-38 (Count II).  As a result, Otter Creek has been unable to obtain financing to construct its qualified facilities.

III.    Discussion

A motion to dismiss tests the legal rather than the factual sufficiency of a complaint. See, e.g., Sims v. Ortiz, 230 F.3d 14, 20 (2d Cir. 2000).  The Court will grant a motion to dismiss only if the pleader fails to show a "plausible entitlement to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Court must accept all facts alleged in the pleading as true and draw all reasonable inferences in favor of the pleader.  Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006).  When resolving a jurisdictional question, the Court may consider materials outside the pleadings.  Hamm v. United States, 483 F.3d 135, 137 (2d Cir. 2007).  The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.  Id.

Under the Federal Power Act, 16 U.S.C. § 791, et seq., Congress granted FERC exclusive authority to regulate sales of electricity at wholesale in interstate commerce.  See 16 U.S.C. § 824(b)(1).  States may not act in this area unless Congress creates an exception.  Id. § 824(b).

In 1978, Congress amended the FPA to create one such exception by enacting PURPA, 16 U.S.C. § 824a-3.  Prior to the enactment of PURPA, traditional electric utilities hesitated from purchasing power from small power producers.  To overcome this obstacle, Congress enacted PURPA, which directed FERC to promulgate rules to encourage cogeneration and small power production, including rules requiring electric utilities to purchase electricity from and sell electricity to producers deemed "qualifying" facilities.  See id. § 824a-3(a).

Section (a) of PURPA requires FERC to prescribe rules as it determines necessary to encourage small power production, including rules requiring electric utilities to offer to purchase energy from qualifying facilities.  Id. § 824a-3(a).  Section (f) then requires state regulatory authorities and nonregulated electric utilities to implement the rules prescribed by FERC.  Id. § 824a-3(f).  Accordingly, a state may regulate wholesale sales by qualifying facilities, i.e., power production facilities that have no more than 80 megawatts of capacity and use renewable generation technology.  Id. § 824a–3(f)(1); see also id. § 796(17)(A).  Those facilities must receive a price for their electricity that is just and reasonable to consumers and non-discriminatory to QFs, generally determined to be equal to the buying utility's "avoided costs," i.e., the costs the utility would have otherwise incurred in procuring the same quantity of electricity from another source.  Id. § 824a–3(b); 18 C.F.R. § 292.304(b)(2).

To emphasize, PURPA imposes obligations on each state regulatory authority to implement FERC's PURPA regulations.  See 16 U.S.C. § 824a–3(f)(1) ("[E]ach State regulatory authority shall, after notice and opportunity for public hearing, implement [a new FERC] rule (or revised rule) for each electric utility for which it has ratemaking authority.").

PURPA also provides FERC and certain private parties with the ability to enforce the requirement that states implement PURPA.  Section (h) provides that, if a state regulatory authority

4

or a nonregulated electric utility fails to implement FERC's rules, FERC may institute an enforcement action. 16 U.S.C. § 824a–3(h). Section (h) also permits a QF to petition FERC to initiate an enforcement action and, if FERC fails to do so within sixty days of the filing of the petition, the QF may bring an action in a federal district court to require the state authority or nonregulated utility to comply with section (f)'s requirement that FERC's rules be implemented. Id. § 824a–3(h)(2)(B). Importantly, "PURPA provides a private right of action to [QF's] to enforce a state's obligations under PURPA." Allco Fin. Ltd. v. Klee, 805 F.3d 89, 92 (2d Cir. 2015) (citing 16 U.S.C. § 824a–3(h)(2)(B)) (emphasis added).

PURPA "directs FERC, in consultation with state regulatory authorities, to promulgate 'such rules as it determines necessary to encourage . . . small power production,' including rules requiring utilities to offer to sell electricity to, and purchase electricity from, [QFs]." FERC v. Mississippi, 456 U.S. 742, 751 (1982) (quoting 16 U.S.C. § 824a-3(a)). As required, FERC rules require electric utilities to purchase all power generated by qualified facilities at rates that are just and reasonable to the electric consumer and non-discriminatory with regard to QFs. 18 C.F.R. § 292.303-04. PURPA "establishes a program of cooperative federalism that allows the States, within limits established by federal minimum standards, to enact and administer their own regulatory programs, structured to meet their own particular needs." FERC v. Mississippi, 456 U.S. at 767 (internal quotation marks and citation omitted). To ensure utilities are properly implementing the requirements of PURPA, Congress requires each state agency with regulatory authority over electric public utilities to implement PURPA's provisions. 16 U.S.C. § 824a-3(f)(1). FERC's regulations "afford state regulatory authorities . . . latitude in determining the manner in which the regulations are to be implemented. [A] state commission may comply with the [PURPA] statutory requirements by issuing regulations, by resolving disputes on a case-by-case basis, or by taking any other action

reasonably designed to give effect to FERC's rules." FERC v. Mississippi, 456 U.S. at 751. Accordingly, if a state chooses to regulate electric utilities, as has Vermont here, it must implement FERC rules. Id.

FERC rules acknowledge two ways in which a QF can establish a right to sell power to an electric utility. The utility and the facility can negotiate a rate at which the utility will purchase the electric power, 18 C.F.R. § 292.301(b)(1), or the facility can establish the right to require the utility to purchase the power "pursuant to a legally enforceable obligation for the delivery of energy or capacity over a specified term," 18 C.F.R. § 292.304(d)(2).[2] "[S]tates must provide for legally enforceable obligations as distinct from contractual obligations, but it is up to the States, not [FERC], to determine the specific parameters of individual QF power purchase agreements, including the date at which a legally enforceable obligation is incurred under State law." Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex., 422 F.3d 231, 238 (5th Cir. 2005). "FERC has given each state the authority to decide when a LEO [legally enforceable obligation] arises in that state." Power Res. Grp., 422 F.3d at 239.

In 1979, subsection (a)(8) was added to Section 209 of the Vermont Statutes providing the Vermont Public Service Board with jurisdiction "in all matters respecting . . . (8) [t]he sale to electric companies of electricity generated by facilities . . . (C) which have a power production capacity which . . . is not greater than 80 megawatts." Vt. Stat. Ann. tit. 30, § 209(a)(8)(C). In 1983, under the authority of Section 209(a)(8)(C), the Vermont PSB promulgated Board Rule 4.100 entitled Small Power Production and Cogeneration.[3] PSB Rule 4.101 notes its purpose is "to encourage

---

[2] Importantly, the concept of "legally enforceable obligation" does not appear in PURPA. It arises from the implementing regulations promulgated by FERC.

[3] Rule 4.100 has been amended twice and is currently undergoing a revision process "to investigate whether there is a more efficient procedural mechanism to implement [PURPA]." Rule

6

development of electricity through use of . . . renewable resources . . . while giving due consideration to the duties and responsibilities of utilities.  The rule implements the provisions of . . . 16 U.S.C. § 824a-3."  In accordance with FERC rules, Rule 4.102 notes the rule does not prohibit voluntary contracts.  Rule 4.104 requires utilities to purchase electricity offered by any QF within Vermont.  For QFs larger than 100 kilowatts, the purchase is made on a pro rata basis through the purchasing agent; for QFs smaller than 100 kilowatts, the purchase is made directly from the QF unless the QF elects to sell to the purchasing agent.  The PSB must approve contracts between the purchasing agent and QFs.

Otter Creek alleges jurisdiction based on federal question, 28 U.S.C. § 1331, and diversity, 28 U.S.C. § 1332, jurisdiction as well as under 16 U.S.C. § 825p of the Federal Power Act.  Compl. ¶¶ 17-19.  GMP and VEPP move to dismiss arguing Otter Creeks claims are "as-applied" challenges that may only be brought in state court under 16 U.S.C. § 824a-3(g).  (Doc. 4 at 6-9; Doc. 6-1 at 1 (adopting GMP's memorandum).)  Thus, Defendants argue this Court has no subject matter jurisdiction--and the plaintiffs fail to state a claim--because no federal cause of action for an "as-applied" challenge exists under PURPA.  Otter Creek argues its claim is not an "as-applied" challenge at all because it is not making a claim under a Vermont program; Otter Creek argues it does not seek "'to enforce any requirement established by the Vermont PSB.'"  (Doc. 7 at 4 (quoting 16 U.S.C. § 824a-3(g)(2)).)  Otter Creek asserts "Defendants' motions to dismiss fail for one simple reason–[PURPA] Section 210(h)(1)."  (Doc. 7 at 1.)  It argues that section "carves out" actions related to QF operations from the scope of actions covered by the state jurisdictional grant in 16 U.S.C. § 824a-3(g).  Id.  Section 210(h)(1) is codified at 16 U.S.C. § 824a-3(h)(1).

---

4.100 Workshop Proceeding, www.psb.vermont.gov/statutesrulesandguidelines/rule4100 (last visited Sept. 8, 2016).  A Final Proposed Rule was filed with the Secretary of State on July 14, 2016.

To begin, Otter Creek overlooks the fact that Subsection (h) is entitled "Commission Enforcement." Indeed, FERC has noted Section (h)(1) gives it "exclusive enforcement authority with regard to any rules prescribed by [it] under section 210(a) of PURPA [16 U.S.C. § 824a-3(a)] 'with respect to any operations of an electric utility . . . or a qualifying small power production facility which are subject to the jurisdiction of the Commission under Part II of the Federal Power Act.'" Policy Statement Regarding the Commission's Enforcement Role, 48 FR 29475-01 (1983) (emphasis added) (quoting 16 U.S.C. § 824a-3(h)(1)). Under Part II of the FPA, FERC regulates sales of electric power in interstate commerce. 16 U.S.C. § 824(b)(1). Because Otter Creek concedes the wholesale sales at issue here are subject to FERC's jurisdiction under Part II of the FPA (Doc. 7 at 1), they are subject to FERC's exclusive enforcement authority under 16 U.S.C. § 824a-3(h)(1).[4] FERC v. Mississippi, 456 U.S. at 751 ("§ 210(h), 16 U.S.C. § 824a-3(h), authorizes

---

[4] In its sur-reply, Otter Creek asserts "FERC explained long ago that federal jurisdiction covered not only review and enforcement of State implementation but direct case-by-case review and enforcement." (Doc. 10-1 at 12 (citing 45 Fed. Reg. 12,214, 12,231 (Feb. 25, 1980).) Otter Creek's parenthetical fails to fully recount FERC's explanation which states, in discussing review and enforcement of PURPA:

> the Commission [FERC] believes that review and enforcement of implementation under section 210 [codified at 16 U.S.C. § 824a-3] of PURPA can consist not only of review and enforcement as to whether the State regulatory authority or nonregulated electric utility has conducted the initial implementation properly–namely, put into effect regulations implementing section 210 rules or procedures for that implementation, after notice and an opportunity for a hearing. It can also consist of review and enforcement of the application by a State regulatory authority or nonregulated electric utility, on a case-by-case basis, of its regulations or of any other provision it may have adopted to implement the Commission's rules under section 210.

45 Fed. Reg. at 12,231. Importantly, this statement followed the discussion of state court jurisdiction. Id. ("persons can bring an action in State court to require the State regulatory authorities or nonregulated utilities to implement these regulations"). It went on to state:

> Section 210(h)(2)(A) [16 U.S.C. § 824a-3(h)(2)(A)] of PURPA states that the Commission may enforce the implementation of regulations under section 210(f). The Congress has provided not only for private causes of action in State courts to obtain judicial review and enforcement of the implementation of the Commission's rules under section 210, but also provided that the Commission may serve as a forum for review and enforcement of the implementation of this program.

FERC to enforce this requirement in federal court against any state authority or nonregulated utility; if FERC fails to act after request any [QF] may bring suit.").

Subsection (h)(2)(A) provides FERC authority to enforce the requirements of subsection (f), under which state regulatory authorities and nonregulated utilities must implement FERC's rules for QFs, against any state regulatory authority or nonregulated utility. 16 U.S.C. § 824a-3(h)(2)(A). It states: "No enforcement action may be brought <u>by the Commission</u> [FERC] under this section other than (i) an action against the State regulatory authority or nonregulated electric utility for failure to comply with the requirements of subsection (f) or (ii) an action under paragraph (1)." <u>Id.</u> While Subsection (h)(2)(B) does provide a private right of action to enforce the requirements of 16 U.S.C. § 824a-3(f) provided the private actor has first petitioned FERC, <u>see</u> 16 U.S.C. § 824a-3(h)(2)(B, Otter Creek hangs its hat on Subsection(h)(1), ostensibly because Otter Creek has not petitioned FERC with regard to this controversy. <u>See</u> Otter Creek Solar LLC, 143 FERC ¶ 61,282.

Lastly, Otter Creek asserts this Court has exclusive jurisdiction under 16 U.S.C. § 825p, (Doc. 7 at 1-2), which provides "exclusive jurisdiction of violations . . . and of all suits . . . brought to enforce any liability or duty created by, or to enjoin any violation of this chapter or any rule, regulation, or order thereunder" to the federal district courts. 16 U.S.C. § 825p. A jurisdictional statute, Section 825p allows district courts to entertain actions authorized by other substantive provisions of the law; it does not create a private right of action. The Supreme Court has explained the concept with regard to § 27 of the Securities Exchange Act of 1934, its jurisdictional provision. Section 27 grants "exclusive jurisdiction of violations . . . and of all suits . . . brought to enforce any liability or duty created by [the Act] or the rules and regulations thereunder" to the federal district

---

<u>Id.</u> (emphasis added).  Accordingly, Otter Creek's assertion FERC's statement supports federal court jurisdiction is misplaced.

courts. 15 U.S.C. § 78aa. The Court held § 27 "creates no cause of action of its own force and effect; it imposes no liabilities. The source of plaintiff's rights must be found, if at all, in the substantive provisions of the 1934 Act which they seek to enforce, not in the jurisdictional provision." Touche Ross & Co. v. Redington, 442 U.S. 560, 576-77 (1979). This Court interprets 16 U.S.C. § 825p in accord with the Supreme Court's interpretation of 15 U.S.C. § 78aa as the two statutes are identical in jurisdictional language. If Otter Creek cannot point to a source of its cause of action within PURPA, § 825p cannot provide it with a private right of action.

PURPA requires administrative exhaustion for claims brought by QFs that are seeking to vindicate specific rights conferred by PURPA. Allco Fin. Ltd., 805 F.3d at 91. Because Otter Creek seeks to enforce a requirement of PURPA, namely the power purchase obligation of 16 U.S.C. § 824a-3(a) prescribed through FERC rules and implemented by the Vermont PSB, the state regulatory authority, under 16 U.S.C. § 824a-3(f)(1), it cannot avoid the administrative exhaustion requirement of 16 U.S.C. § 824a-3(h)(2)(B). Allco Fin. Ltd., 805 F.3d at 95 (determining PURPA's conferral of a private right of action requiring compliance with specific pre-lawsuit procedures supports the "ordinary inference that the remedy provided in the statute is exclusive") (internal quotation marks and citation omitted).

For purposes of the pending motion, Defendants do not dispute that Otter Creek is a "qualified facility." (Doc. 4 at 5.) Section 824a-3(a) empowers FERC to promulgate rules to encourage small power production. Otter Creek's claim is an attempt to enforce those rules, including 18 C.F.R. § 292.304(d), requiring utilities to buy power from Otter Creek at a rate at or below the avoided cost. Compl. ¶ 12. Section 824a-3(f) requires states to "implement" FERC's rules promulgated under 16 U.S.C. § 824a-3(a) by "issuing regulations, by resolving disputes on a case-by-case basis, or by taking any other action reasonably designed to give effect to FERC's rules."

FERC v. Mississippi, 456 U.S. at 751.  Accordingly, the Vermont PSB has the responsibility to implement the power purchase requirement.  Id. at 759 ("PURPA, for all its complexity, contains essentially three requirements: (1) § 210 [16 U.S.C. § 824a-3] has the States enforce standards promulgated by FERC; (2) Titles I and II direct the States to consider specified ratemaking standards; and (3) those Titles impose certain procedures on state commissions." (Emphasis added)).

That Otter Creek is attempting to work outside the framework Vermont has created to implement FERC's rules does not relieve it of the obligation to exhaust administrative remedies under 16 U.S.C. § 824a-3(h)(2)(B) if it seeks to obtain federal district court review of this controversy.  Otter Creek seeks to force GMP to contract but has not availed itself of the state of Vermont's implementation of FERC's PURPA rules or of the state's obligation to ensure its regulated utility, GMP, is complying with the requirements of PURPA.

This Court lacks jurisdiction to hear Otter Creek's claim.

IV.     Conclusion

Otter Creek's motion for leave to file a sur-reply (Doc. 10) is GRANTED.  For the reasons set forth above, GMP's motion to dismiss (Doc. 4) and VEPP's motion to dismiss (Doc. 6) are GRANTED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 22nd day of September, 2016.

                                  /s/ J. Garvan Murtha
                                  Honorable J. Garvan Murtha
                                  United States District Judge